IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| RANDY LEWIS, *on behalf of himself and all others similarly situated,* | No. 2:14-mn-00001-DCN <br> No. 2:14-cv-00549-DCN |
| Plaintiff, | |
| vs. | |
| PELLA CORPORATION, | **ORDER** |
| Defendant. | |

This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella"). For the reasons set forth below, the court grants Pella's motion and dismisses all of plaintiff's causes of action.

## I.  BACKGROUND

Plaintiff Randy Lewis ("Lewis") purchased Pella Designer Series windows in the summer of 2006 to install in his home in Festus, Missouri. Compl. ¶ 22. The following winter, Lewis "began experiencing fog and moisture on the interior of the window, including freezing, as well as water infiltration, swelling, bowing, and warping." Id. He contacted Pella "repeatedly" over the next several years because of these problems, but claims that the alleged "defects were repeatedly denied and concealed." Id. In May 2010, Pella replaced the glass in eleven windows and the backdoor. Id. In May 2012, Pella replaced the front door because the front exterior separated from the main door frame. Id. At some point in 2013, Lewis alleges that he "again experienced freezing and ice on the interior of the window, as well as water infiltration, air leakage, swelling, bowing, warping, and sagging," and contacted Pella regarding these issues. Id.

1

Lewis alleges that the windows suffer from a defect in the "design of the sill extrusion and sill nailing fin attachment as well as a defect in the design of allowing a gap between the jamb gasket and the sill gasket." Id. ¶ 36. Lewis alleges that due to these design defects, water leaks through the windows and can become trapped between the cladding and the operable wood frame, causing damage to the windows and "other property within the home as well." Id. Lewis further alleges that Pella knew of the defect when it shipped the windows. Id. ¶ 52.

On January 17, 2014, Lewis filed a class action complaint against Pella in the United States District Court for the Eastern District of Missouri, asserting jurisdiction based on diversity of citizenship. The complaint brings the following eight causes of action: (1) violation of the Missouri Merchandising Practices Act ("MMPA"); (2) negligence; (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) fraudulent concealment; (6) unjust enrichment; (7) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq.; and (8) declaratory relief.

Pella filed the instant motion to dismiss on March 18, 2014. Lewis opposed the motion on May 9, 2014, and Pella replied on May 23, 2014. On February 27, 2014, the United States Judicial Panel on Multidistrict Litigation transferred Lewis's case to this court as part of the consolidated multidistrict litigation. Pella's motion to dismiss has been fully briefed and is now ripe for the court's review.

## II.  STANDARDS

### A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.  Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1448 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  "In multidistrict litigation, the law of the

transferee circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Missouri substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

Pella Corp. asserts that all of Lewis's claims should be dismissed. The court first determines whether the applicable statutes of limitations are tolled by equitable tolling or class action tolling. The court will then consider Pella's arguments about each claim individually.

**A.     Tolling**

Pella argues that all of Lewis's claims are barred by their respective statutes of limitations. While the specific statute of limitations for each claim will be discussed below, the parties argue about the application of two tolling doctrines to all of the statutes of limitations: equitable estoppel and class action tolling. In considering these doctrines, the court notes at the outset that it is well-settled under Missouri law that statutes of limitations are favored and can be avoided only by strictly complying with specific legislative exceptions, which courts cannot extend. Owen v. Gen. Motors Corp., 533 F.3d 913, 919 n.5 (8th Cir. 2008) (citing Neal v. Laclede Gas Co., 517 S.W.2d 716, 719 (Mo. Ct. App. 1974)).

### 1.     Fraudulent Concealment

Lewis first argues that Pella is estopped from relying on any statute of limitations defense because it fraudulently concealed that its windows were defective. Compl. ¶ 61; Pl.'s Resp. 6.

Missouri law provides that "[i]f any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." Mo. Rev. Stat. § 516.280; see also Tilley v. Franklin Life Ins. Co., 957 S.W.2d 349, 351 (Mo. Ct. App. 1997) ("If a party takes affirmative action to conceal the fraud, the statute is tolled until the fraud is discovered." (citation omitted)). "To constitute concealment of a cause of action within the general rule tolling the statute of limitations on that ground the concealment must be fraudulent or intentional and, . . . there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." Owen, 533 F.3d at 919-20 (quoting Hasenyager v. Bd. of Police Comm'rs of Kansas City, 606 S.W.2d 468, 471 (Mo. Ct. App. 1980)). To avoid the running of the statute of limitations, the fraudulent concealment "must be something more than mere silence on defendant's part . . . ; usually the employment of some means or device to prevent discovery should be shown." Id. at 920 (quoting Gilliam v. Gohn, 303 S.W.2d 101, 107 (Mo. 1957)). "Silence becomes misrepresentation only when there is a duty to speak, such as 'when one of the parties has superior knowledge or information not within the fair and reasonable reach of the other party.'" Id. (quoting Bohac v. Walsh, 223 S.W.3d 858, 864 (Mo. Ct. App. 2007)).

In determining whether there was fraudulent concealment which tolls the statute of limitations, "a pivotal issue is when plaintiffs realized they had a cause of action." M & D Enterprises, Inc. v. Wolff, 923 S.W.2d 389, 400 (Mo. Ct. App. 1996) (citing Tayborn v. Burstein, 748 S.W.2d 824, 826 (Mo. Ct. App. 1988)). Fraudulent concealment is "inapplicable if a plaintiff knows or should have known he had a cause of action." Id. (citing Miller v. Guze, 820 S.W.2d 576, 578 (Mo. Ct. App. 1991)). In other words, statutes of limitation will be tolled due to fraudulent concealment only until a plaintiff "discover[s] the fraud or should have discovered it by the exercise of reasonable diligence." Summerhill v. Terminix, Inc., 637 F.3d 877, 881 (8th Cir. 2011).

Pella argues that by failing to allege when and how he discovered Pella's alleged fraud, Lewis has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims. See Summerhill, 637 F.3d at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp., 546 F.2d 570, 574 (4th Cir. 1976) ("A complaint, (to avoid the statute of limitations,) must state . . . distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made." (citation omitted)); Bergen v. Rothschild, 648 F. Supp. 582, 587 (D.D.C. 1986) ("In general, courts read Rule 9(b) as requiring the fraudulent concealment plaintiff to plead with as much particularity as possible . . . the dates and circumstances of the eventual discovery of the underlying fraud."); Stewart

6

Coach Indus., Inc. v. Moore, 512 F. Supp. 879, 886 (S.D. Ohio 1981) (holding that a plaintiff relying on the "discovery rule" must "affirmatively and particularly plead the date of discovery . . . or face dismissal of the complaint"); 51 Am. Jur. 2d Limitation of Actions § 163 ("One may not avoid the effect of the statute of limitations on the ground of fraudulent concealment if he or she fails to plead or offer evidence as to when he or she discovered the alleged fraud.").

Nowhere in Lewis's complaint or response does he allege when he actually discovered the alleged fraudulent concealment. Thus, the court has no indication when any tolling of the statute of limitations should have ended. Therefore, Lewis is not entitled to rely on fraudulent concealment to toll the statutes of limitations. Even if fraudulent concealment did apply, Lewis bases his argument on Pella allegedly concealing the fact that the windows are defective. Compl. ¶ 61. Lewis should have been on notice that the windows were defective by early 2007 when he began to experience various problems with his windows. Therefore, any equitable tolling would cease by early 2007. As discussed below, even if the statutes of limitations were tolled pursuant to fraudulent concealment until early 2007, Lewis's claims would still be time-barred.

### 2.     Class Action Tolling

Lewis also contends that the filing of a previous class action in federal court in the Northern District of Illinois, Saltzman v. Pella, tolled the statutes of limitation for his claims. Pl.'s Resp. 11.

The doctrine of class action tolling was first announced in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974). In American Pipe, the Supreme Court held

7

that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification – at least where certification is denied for failure to meet the numerosity requirement of Federal Rule of Civil Procedure 23.  Id. at 552-53; see also id. at 554 ([T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").  The Supreme Court has extended the American Pipe rule to purported members of the class who later file individual suits rather than intervene.  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

American Pipe tolling, however, applies only to a "subsequently filed federal question action . . . during the pendency of a federal class action."  Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999) (citing American Pipe, 414 U.S. 552-53) (emphasis added); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a federal statute, the Sherman Act.  It did not purport to announce a rule that would apply to state law claims. . . .  The plaintiffs cannot rely on American Pipe to toll the statutes of limitations for their state law claims. The plaintiffs must look to any state analogue to American Pipe tolling rather than American Pipe itself.").

Therefore, the court must determine whether Missouri law would toll the statutes of limitations during the pendency of the Saltzman federal class action.  Here, Missouri law is clear.  The Missouri Supreme Court recently considered whether the statute of limitations at issue was tolled by a class action pending in state court in Ohio.  Rolwing v. Nestle Holdings, Inc., --- S.W.3d ----, 2014 WL 2583407, at *3 (Mo. June 10, 2014).

The court reiterated that under Missouri law, a "statute of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the Legislature and the courts are not empowered to extend those exceptions." Id. at *4 (citation omitted). The court went on to note that beyond specific statutory exceptions, "the only equitable tolling exceptions recognized by our Missouri courts are essentially where either pending litigation elsewhere has prevented the plaintiff from bringing suit earlier, or where the defendant himself has prevented the plaintiff from timely bringing suit." Id. The court determined that the filing of a class action did not trigger either of those tolling doctrines, and therefore did not toll the statute of limitations under Missouri law. Id. at *5-*6.

Lewis argues that Rowling has not been published and is therefore not precedential. Pl.'s Resp. 11. Lewis instead contends that Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C., 801 S.W.2d 382 (Mo. Ct. App. 1990), permits class action tolling under Missouri law. In Hyatt, the court held that "class action complaints tolled the statute of limitations on behalf of all putative [members of the class], including those who subsequently filed their own actions or settled individual claims during the pendency of the Jacob class action." Id. at 389 (citing Crown, Cork & Seal, 462 U.S. at 353-54; American Pipe, 414 U.S. at 553) (emphasis in original).

As an initial matter, it is not clear that Hyatt dealt with cross-jurisdictional tolling. The Fourth Circuit has been reluctant to read cross-jurisdictional tolling into state law where it is otherwise silent. Wade, 182 F.3d 281, 287 (4th Cir. 1999) (applying Virginia law); see also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to import a cross-jurisdictional tolling rule into California law, which otherwise does not have such a rule, and finding that "[t]he rule of American Pipe –

9

which allows tolling within the federal court system in federal question class actions – does not mandate cross-jurisdictional tolling as a matter of state procedure"). Moreover, the cases cited by Hyatt are all federal cases; therefore, it is not clear that the court considered class action tolling under Missouri law. The court is persuaded that the Missouri Supreme Court's recent analysis of the issue in Rowling is the right one.

Because Missouri law does not recognize cross-jurisdictional class action tolling, the doctrine does not toll the statutes of limitations for Lewis's claims.

### B.     Counts I, II, & VI – Violation of the MMPA, Negligence, and Unjust Enrichment

Pella contends that Lewis's claims for violation of the MMPA, negligence, and unjust enrichment are barred by the relevant statute of limitations. Def.'s Mot. 5-8.

Under Missouri law, claims for violation of the MMPA, negligence, and unjust enrichment are all subject to a five-year statute of limitations. Mo. Rev. Stat. § 516.120; see also Ball v. Friese Constr. Co., 348 S.W.3d 172, 176 (Mo. Ct. App. 2011); Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717-18 (Mo. Ct. App. 2010); Royal Forest Condo. Owners's Ass'n v. Kilgore, 416 S.W.3d 370, 373 (Mo. Ct. App. 2013). The statute is triggered when "damage is sustained and becomes capable of ascertainment." Mo. Rev. Stat. § 516.100.

The Missouri Supreme Court has interpreted the "capable of ascertainment" standard as an objective standard and has held that "the statute of limitations begins to run when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'" Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. 2006) (quoting Business Men's Assur. Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. 1999)) (emphasis omitted). The test to be applied is "when a reasonable

person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." State ex rel. Marianist Province of U.S. v. Ross, 258 S.W.3d 809, 811 (Mo. 2008) (citation omitted).  Thus, "[i]n order for the statute [of limitations] to accrue, plaintiff must have knowledge of the wrong and at least nominal damage, or [knowledge] of something that puts plaintiff on notice to inquire further."  Gaydos v. Imhoff, 245 S.W.3d 303, 307 (Mo. Ct. App. 2008).

The Missouri Supreme Court has also explained that the phrase "capable of ascertainment" refers to "the fact of damage, rather than to the exact amount of damage." Graham, 984 S.W.2d at 507 (citation omitted); see also Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) ("All possible damages do not have to be known, or even knowable, before the statute accrues."); Dixon v. Shafton, 649 S.W.2d 435, 438 (Mo. 1983) ("The word 'ascertain' has always been read as referring to the fact of damage, rather than to the precise amount.").  Thus, "[d]amages are ascertained when the fact of damage appears, not when the extent or amount of damage is determined."  Kennedy v. Microsurgery & Brain Research Inst., 18 S.W.3d 39, 42 (Mo. Ct. App. 2000) (citation omitted).

Where there is more than one item of damage, the cause of action does not accrue until the last item of damage is sustained so that all damages may be recovered.  Mo. Rev. Stat. § 516.100.  In order for there to be multiple items of damage, there must be "new and distinct damages" of a different "nature and degree" from the original damage. Ball, 348 S.W.3d at 178-79.  On the other hand, in situations where "one wrong . . .

results in continuing damage, . . . the cause of action accrues when that wrong is committed and the damage sustained is capable of ascertainment." Id. (citation omitted).

This case is analogous to Ball. In Ball, the plaintiff discovered cracking in his basement floor shortly after his home was constructed in 2001. 348 S.W.3d at 174. The plaintiff complained to the construction company and had two engineering reports conducted in 2002 that indicated that the basement floor slab was heaving, possibly due to water issues beneath the slab. Id. at 178. The plaintiff continued to experience similar problems after remedial efforts were completed, but "neglected to employ additional experts to ascertain the nature of his damages" until 2009. Id. The Ball court first determined that the damages that were evident, combined with the engineering reports, "would have put a reasonably prudent person on notice of a potentially actionable injury." Id. at 177. The court then found that the plaintiff's "observations and complaints of damages in 2001 and 2002 were of the same nature and degree as those of which he complained in his 2010 petition, all the result of a single wrong," and that the plaintiff therefore did not sustain multiple items of injury. Id. 178-79.

Here, Lewis began experiencing problems with his windows by early 2007. Comp. ¶ 22. Those problems "would have put a reasonably prudent person on notice of a potentially actionable injury." Ball, 348 S.W.3d at 177. Moreover, Lewis has not alleged any damages of a different nature and degree than those he observed in 2007. Therefore, the statute of limitations began to run in early 2007, at the latest, when he first noticed issues with his windows. Because he did not file his complaint until early 2014, Lewis's MMPA, negligence, and unjust enrichment claims are time-barred.

### C.      Counts III, IV, and VII – Breach of Express Warranty, Breach of Implied Warranty of Merchantability, and Violation of the MMWA

Pella next argues that Lewis's breach of warranty claims are barred by the statute of limitations. Def.'s Mot. 6.

Under Missouri law, breach of warranty claims are subject to a four-year statute of limitations.[1] Mo. Rev. Stat. § 400.2-725(1). The statute of limitations accrues upon delivery unless the warranty "explicitly extends to future performance of the goods . . . ." Id. § 400.2-725(2). Because the windows were delivered in 2006, Lewis's warranty claims are barred unless the warranties extend to future performance.

As an initial matter, "[b]y its very nature, an implied warranty of merchantability does not warrant future performance of a product." May v. AC & S, Inc., 812 F. Supp. 934, 944 (E.D. Mo. 1993) (applying Missouri law); see also Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 879 (8th Cir. 2000). Therefore, Lewis's claim for breach of the implied warranty of merchantability is time-barred.

The only remaining issue is whether Pella's express warranties explicitly extended to future performance. "To constitute a warranty for future performance, the terms of the warranty must unambiguously indicate that the manufacturer is warranting the future performance of the goods for a specified period of time." Wienberg v. Independence Lincoln-Mercury, Inc., 948 S.W.2d 685, 689 (Mo. Ct. App. 1997) (quoting R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 823 (8th Cir. 1983)). A warranty that a product is free from defect in quality or workmanship is a warranty for

---

[1] The MMWA does not contain a statute of limitations, so courts have held such claims are governed by the same limitations period that applies to the underlying state law breach of warranty claims. See Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 789 (8th Cir. 2009); Edwards v. Hyundai Motor Am., 163 S.W.3d 494, 501 (Mo. Ct. App. 2005).

future performance of the product.  Id.  Where a warranty expressly extends to future performance of the goods, repair or replacement language does not necessarily nullify the future performance warranty, but instead limits the remedy for breach of the warranty of future performance to repair or replacement.  Id. at 690.

Even assuming that the express warranties here extend to future performance, Lewis's breach of express warranty claim accrued as soon as the alleged "breach is or should have been discovered."  Mo. Ann. Stat. § 400.2-725(2).  Lewis alleges that Pella expressly warranted that the windows were free from defects and appropriate for their intended use.  Compl. ¶¶ 89, 92, and 94.  Lewis claims that "Pella breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose."  Id. ¶ 100.  As discussed above, Lewis began experiencing problems with the windows in late 2006 or early 2007.  Id. ¶ 22.  At that time, he should have discovered the alleged breach – that the windows were defective and not reasonably fit for their ordinary and intended purpose.  Because Lewis did not file this suit until 2014, his claims for breach of express warranty and violation of the MMWA are dismissed as time-barred.[2]

### D.     Count V – Fraudulent Concealment

Pella argues that Lewis's fraudulent concealment claim is barred by the statute of limitations.  Def.'s Mot. 8.

---

[2] Lewis's claim is focused entirely on express warranties that the windows were free of defects and appropriate for their intended use, Compl. ¶¶ 89, 92, and 94, and does not base its claim on Pella's failure to repair or replace the windows pursuant to the terms of the 10-year limited warranty that shipped with the windows.  Therefore, it is not necessary for the court to consider whether an express warranty claim based on the limited warranty to repair or replace would be timely under § 400.2-725(2).

Missouri law provides that a claim based on fraud must be commenced within five years, "the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." Mo. Rev. Stat. § 516.120(5). Missouri courts have held that "discovery" under this section occurs when the plaintiff actually discovers "or in the exercise of due diligence, should have discovered the fraud." Burr v. Nat'l Life and Accident Ins. Co., 667 S.W.2d 5, 7 (Mo. Ct. App. 1984). In other words, "[t]he cause of action accrues when a plaintiff has sufficient facts to inform a reasonable person that a fraud has been committed." Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 867 (Mo. Ct. App. 2000) (citing Vogel v. A.G. Edwards & Sons, Inc., 801 S.W.2d 746, 755 (Mo. Ct. App. 1990)).

Lewis's fraudulent concealment claim is based on Pella failing to disclose that the windows were defective but instead "concealing the material defects." Compl. ¶ 123. As discussed above, Lewis began experiencing problems with the windows in late 2006 or early 2007. Id. ¶ 22. At that time, he had knowledge of facts sufficient to inform a reasonable person that Pella had concealed defects in the windows. Therefore, the statute of limitations on his fraudulent concealment claim had run by early 2012, about two years before he filed suit.

The court dismisses Lewis's fraudulent concealment claim as time-barred.

### E.     Count VIII – Declaratory Relief

Finally, Pella argues that Lewis's claim for declaratory relief must be dismissed because the Declaratory Judgment Act does not create an independent cause of action. Def.'s Mot. 31.

The Declaratory Judgment Act states that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201.  The Declaratory Judgment Act is procedural only, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)), and "does not create an independent cause of action." Chevron Corp. v. Naranjo, 667 F.3d 232, 244 (2d Cir. 2012).  Because the court dismisses all of Lewis's other claims against Pella, it also dismisses his declaratory judgment claim.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** Pella's motion to dismiss and **DISMISSES** Lewis's complaint without prejudice.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**December 17, 2014
Charleston, South Carolina**

16